# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| STACI CHRISTENSEN, JOHN R. WEAKLY, and DISABILITY LAW CENTER,<br><br>Plaintiffs,<br><br>vs.<br><br>JOSEPH MINER M.D., et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:18CV37DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on a Motion to Intervene filed by several Intermediate Care Facilities ("ICFs") in Utah. On September 24, 2019, the court held a hearing on the motion. At the hearing, Plaintiffs were represented by Laura Henrie, Nate Crippes, and Cedar Cosner, the State Defendants were represented by David N. Wolf, and the ICF Movants were represented by Michael J. Collins, and Greg Anjewierden. The court took the matter under advisement. The court has carefully considered the memoranda submitted by the parties and the law and facts relevant to the motions. Now being fully advised, the court enters the following Memorandum Decision and Order.

## BACKGROUND

On December 19, 2016, the Disability Law Center ("DLC") wrote a letter to Governor Herbert, the Executive Director of the Utah Department of Health ("UDOH"), and the Executive Director of Human Services, alleging that the State of Utah's failure to create a working plan to

transition individuals with intellectual and/or developmental disabilities from intermediate care facilities into the community at a reasonable pace constitutes a violation of the Americans with Disabilities Act and *Olmstead v. L.C.*, 527 U.S. 581 (1999). State officials met with several parties and held a series of public meetings to seek input from interested parties regarding the need for home and community based services for individuals with intellectual and developmental disabilities. However, the DLC was not satisfied with the pace of progress and filed this class action lawsuit against the various State defendants on January 12, 2018.

The Complaint requested that the State of Utah: (1) develop and implement a working plan for identifying and transitioning individuals with intellectual or developmental disabilities from private ICFs into home and community-based services by providing appropriate information and supports and conducting appropriate assessments of all residents to determine individual preference; (2) evaluate, improve, and expand the services that support individuals with intellectual or developmental disabilities so that individuals who reside in private ICFs and are not opposed to leaving may live in integrated, community-based settings; and (3) reduce the State's reliance on segregated, institutional care in private ICFs for individuals with intellectual or developmental disabilities in Utah.

The ICFs currently moving to intervene state that they did not attempt to intervene in the lawsuit at that time because there was no need to based on the allegations of the Complaint. The ICFs state that they do not oppose additional treatment options for residents that want to leave the facilities. On July 27, 2018, state officials met with counsel for the Utah Health Care Association to discuss the status of the lawsuit, the possibility of settlement, and whether UHCA or its member ICFs were going to intervene in the lawsuit. Again, on August 16, 2018, state

2

officials met with ICF representatives to discuss the ICF transition program and issues related to the pending lawsuit. Then, on November 19, 2018, state officials held a conference call to discuss the ICF transition program and issues related to the pending lawsuit.

Before the proposed Settlement Agreement for this case was approved by the Governor and State Legislature, public committee meetings were held to discuss funding and other issues related to the potential settlement. On February 6, 2019, the proposed Settlement Agreement was presented to the Social Services Appropriations Subcommittee, along with UDOH and DHS funding requests. The state agencies' presentation included power point slides identifying anticipated ICF bed reductions and suggested funding for ICF quality improvements. On March 4, 2019, Governor Herbert approved the terms of the Settlement Agreement and forwarded it the President of Senate and Speaker of the House of Representatives. At the legislative hearing on it, a representative of UHCA spoke on the bill. On March 12, 2019, the Legislature passed the bill approving the terms of the Settlement Agreement. On April 16, 2019, Utah Department of Health representatives met with ICF representatives to discuss the Settlement Agreement at the UHCA spring conference.

On May 14, 2019, this court certified Plaintiffs' proposed class of "all persons with an intellectual and/or developmental disability who are eligible for Medicaid, reside in a private ICF in Utah on or after January 12, 2018, and prior to the termination of this lawsuit have expressed an interest in living in the community and are capable of living in the community." On May 17, 2019, this court preliminarily approved the parties' proposed joint Settlement Agreement and scheduled a fairness hearing for final approval to be held on October 17, 2019.

The ICF movants state that they learned of the parties' Joint Motion for Settlement

Approval in a July 2, 2019 letter the DLC sent to administrators at various ICF/ID facilities. The ICF movants claim that the proposed Settlement Agreement goes far beyond the relief requested in Plaintiff's Complaint because it requires Defendant to transition approximately 300 potential class members from private ICFs to HCBS within six years, put in place a permanent moratorium on licensing additional beds in private ICFs in Utah, and reduce the total number of licensed private ICF beds. The Settlement Agreement does not identify the approximately 300 class members who want to transition away from ICFs and does not appear to be congruent with the desire to provide patient choice.

## DISCUSSION

### ICFs' Motion to Intervene

The ICF movants seek only intervention as a matter of right under Rule 24 of the Federal Rules of Civil Procedure. Under the provisions for intervention as a matter of right, Rule 24(a) requires a court to permit anyone to intervene who "(1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a).

A court must, therefore, consider whether: 1) the application is timely; 2) the applicant claims an interest relative to the property at issue; 3) the interest may as a practical matter be impaired; and 4) the interest is adequately represented by existing parties. *See Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001). A party must show they have a "direct, substantial, and legally protectable" interest in the action. *Id.* at 1251.

4

*1. Timeliness*

The ICFs assert that their motion is timely because their interests did not become impacted until the parties' filed the Joint Motion for Approval of Settlement. The ICFs contend that the Complaint appears to only advocate for patient choice, but the Settlement Agreement provides relief to Plaintiffs that was not sought for in the Complaint and which affects the property and interests of the ICFs.

The court disagrees with the ICFs' characterization of the Complaint. The Complaint contains numerous provisions that should have put the ICFs on notice that Plaintiffs were seeking a reduction of services at ICFs. The Complaint specifically stated that the State needed to reduce its reliance on ICFs and was improperly designing services in a way to keep ICFs fully populated. The most obvious way to reduce the State's reliance on ICFs is to reduce the number of beds. Given the allegations in the Complaint, the ICFs have known about their interests in this case since the time it was filed.

There is also evidence that the ICFs have been participating in the public and legislative process involving the issues presented in this case. After the lawsuit was filed, the State continued to discuss the lawsuit with the ICFs. When the proposed Settlement Agreement was presented to the Legislature, the ICFs participated in legislative committee hearings to express their position on the settlement. After the Settlement Agreement was approved by the Governor and the Legislature, UDOH sought the ICFs' input on the proposed administrative rule changes precipitated in part by the Settlement Agreement. The ICFs' assertion that they did not know about the Settlement Agreement until July 2019 is not supported by evidence.

The ICFs have known about these issues for years, known about the lawsuit, and known

5

about the settlement process between the parties to this lawsuit for years. The ICFs claim that the parties to the lawsuit did not allow them to learn about the details of the settlement during negotiations. This assertion demonstrates that the ICFs thought they had an interest in the case at that time. If the ICFs thought they should have been a party to resolving the case at that time, then that is the time that they should have sought to intervene. The ICFs claim that the parties would have opposed the motion, but that is not an excuse for failing to bring the motion. If the ICFs desired to have this court adjudicate their interests, they should have sought to intervene during the settlement process. The ICFs' desire to insert their own claims against the State at this point in the litigation will unduly delay resolution of this case. And, as more fully explained below, the claims against the State are only vaguely formed. Accordingly, the court finds the ICFs' motion to intervene as of right to assert their own claims against the State to be untimely.

   *2. Property Interest & Impairment*

The ICFs claim that they have an interest relating to the property or transaction which is the subject of this action because the Proposed Settlement Agreement seeks to reduce the total number of licensed ICF beds. The ICFs argue that they should be able to intervene to assert claims against the State, claiming that the State cannot take those licenses away under the Health Care Facility Licensing and Inspection Act, Utah Code Ann. § 26-21-1 *et al.*, and without affording the ICFs due process.

The ICFs are critical of the Settlement Agreement because it requires the State to reduce the number of licensed beds at ICFs by approximately 175 beds over the next six years as class members transition to the State's newly-created Home and Community-Based Services ("HCBS"). The Working Plan, which is incorporated into the Settlement Agreement, provides

that the State will transition approximately 50 individuals per year who have expressed an interest in living in the community from 2020-2024. Currently, the State is aware of 137 class members who desire HCBS and another 93 individuals who are undecided. The Settlement Agreement contemplates the possibility that the parties have over-estimated the appeal of leaving an ICF and entering HCBS by making a clear expression of an interest to live in the community a prerequisite to transitioning from an ICF.

The ICFs claim a property interest in the licenses issued by the Department of Health for beds within ICFs that they claim will be impacted by the Settlement Agreement–the moratorium on new ICF beds and the reduction of existing licensed beds to no more than 465.[1] But the ICFs have not demonstrated that they have a legally protected property interest in the licensed beds. The ICFs receive payment for licensed beds from the State as a covered Medicaid benefit. An ICF licensed bed is an optional Medicaid benefit. The State is not obligated to provide the benefit and can offer ICF and HCBS as it chooses. The ICFs potential loss of some business is merely caused by governmental regulations allowing patients options–options the Plaintiffs believe are required by the ADA.

Moreover, the Settlement Agreement does not state that any bed licenses must be revoked. The Settlement Agreement states that the number of beds at ICFs must be reduced, not revoked. The State can reduce the number of beds without revoking a license. Plaintiffs point out that the State could engage in voluntary buybacks or other strategies going forward as it implements the Settlement Agreement. Therefore, the ICFs' claimed property interest is not

---

[1] The ICFs admitted at the hearing that the State can put in place a moratorium on new beds.

necessarily affected.

Also significant for purposes of intervention, the ICFs have failed to demonstrate that the claims they wish to assert against the State are ripe. Because of the implementation process set forth in the proposed Settlement Agreement, the ICFs cannot claim that any interest is currently or imminently being impaired. The Settlement Agreement contemplates additional legislative and administrative proceedings. The ICFs contend that any future administrative proceedings would be a sham because the State would need to revoke licenses to reduce ICF beds. However, nothing in the proposed Settlement Agreement mandates a deprivation of the ICFs rights. As discussed above, the State could deal with the issue in several different ways. Moreover, it would be improper for this court to assume that any future administrative proceedings would be a sham–more concrete facts and circumstances must be before the court before it can determine a violation of due process. The facts and circumstances presently before the court demonstrate that the ICFs will be able to be involved and protect their interests in future legislative and administrative proceedings as the State implements the proposed Settlement Agreement.

The State has not taken any action against any existing ICF licensed bed. The Settlement Agreement does not specifically identify how the reduction of licensed beds will occur, other than to ensure that UDOH may pursue changes to State law necessary to accomplish this goal. Nothing prevents the ICFs from participating in the legislative process and lobbying against this policy change. Until the Legislature changes state statute and/or UDOH takes specific action to take away a licensed bed, the ICFs' claimed interest is not ripe. The Settlement Agreement simply sets broad obligations and provides the Defendant with significant flexibility in meeting those obligations.

To the extent that the ICF/IDs have an interest, it appears to be a contingent interest. That type of interest is insufficient to warrant intervention of right. *In re Kaiser Steel Corp.*, 998 F.2d 783, 791 (10th Cir. 1993). The ICFs' collective claimed interest in bed licenses is at best contingent on how the State chooses to satisfy its obligations, not on the outcome of this specific proceeding. The approval of the Settlement agreement does not mean that any particular ICF will automatically lose a single bed license. No ICF/ID interest is impaired or impeded by approving the settlement.

*3. Adequate Representation*

The ICFs claim that their interests are not being adequately represented by any current party. However, because the court has determined that the ICFs do not have a presently-ripe protectable interest, the court does not believe that it needs representation in this case.

Based on the above reasoning, the court concludes that the ICFs have not demonstrated a basis for intervention as a matter of right. Therefore, the court denies the ICF's motion to intervene.

**Permissive Intervention**

The ICFs did not seek to intervene under Rule 24's permissive intervention provisions. However, at the hearing on their motion, they agreed that they were not opposed to entering the case through permissive intervention. Under the permissive intervention provisions of Rule 24, a court, in its discretion, can allow for intervention: "(1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b). The court should consider whether the intervention "will unduly delay or prejudice the adjudication of the rights of the

9

original parties." *Id.*

The court believes that this is an unusual class action in that it raises significant public interest concerns for non-class members. The defined class in this action is quite limited. Individuals are only class members if they want HCBS rather than residency in an ICF. However, the ICFs and non-class member residents of ICFs are concerned about the impact the proposed settlement will have on them. The court is cognizant of their concerns and understands that they are significant.

In its discretion, the court will permit the ICFs to intervene in this action in limited fashion–not to assert their own claims against the State, but to participate in the Fairness Hearing scheduled on the proposed Settlement Agreement. Under Rule 23(e) of the Federal Rules of Civil Procedure, "[t]he claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." A district court is empowered to approve a proposed settlement of a class action if the proposed settlement is "fair, reasonable and adequate." *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993). In determining whether to approve a proposed settlement, the court must first be concerned with the protection of the rights of the passive class members. 7B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1979.1 (2d ed. 1986). The court is also required to "ensure that the agreement is not illegal, a product of collusion, or against the public interest." *United States v. Colo.*, 937 F.2d 505, 509 (10th Cir. 1991). Therefore, the court must consider fairness for the passive class members and ensure that the provisions of the proposed Settlement Agreement are not against the public interest.

Permissive intervention under Rule 24 is available when an applicant's claim or defense and the main action have a question of law or fact in common. The court finds that the only

common question of law and fact between the ICFs and the parties in this class action is whether the proposed Settlement Agreement is not against the public interest. In that respect, the ICFs' intervention is not untimely because it will only be for purposes of participating in the Fairness Hearing, not asserting a new claim against the State. Accordingly, this limited intervention will not cause undue delay or prejudice the original parties.

In the court's role of ensuring that the proposed Settlement Agreement is not against the public interest, the court believes that the ICFs should be able to participate at the Fairness Hearing in a limited fashion. With respect to non-class member residents of ICFs, the court has read all of the letters sent from the public and understands their concerns regarding the need for ICFs. The court appreciates the public's participation in writing these letters to the court and does not believe that any additional public comment is necessary at the Fairness Hearing. However, the court sees value in conducting a Fairness Hearing that will fully inform the court and public as to the basis of the proposed Settlement Agreement and that will address concerns relating to the Settlement Agreement's implementation.

The court will hold the Fairness Hearing on October 17, 2019, from 1:30 to 5:00 p.m. and October 18, 2019, from 9:00 a.m. to 5:00 p.m. The court believes that the expert retained by the original parties should testify. In addition, each party may call up to two witnesses in support of their position – 2 from Plaintiffs, 2 from Defendants, and 2 from ICF intervenors. Because of time constraints, cross examination should not exceed the length of the direct examination. The parties should disclose their witnesses by October 3, 2019. In addition to witness testimony, the parties should also plan for short opening statements of no longer than fifteen minutes each and closing statements not to exceed thirty minutes per party.

**CONCLUSION**

Based on the above reasoning, the ICFs' Motion to Intervene is GRANTED IN PART AND DENIED IN PART. The court denies intervention as of right but grants permissive intervention for purposes of participating in the Fairness Hearing on the proposed Settlement Agreement. The Fairness Hearing will be conducted as outlined above.

DATED this 24th day of September, 2019.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge