IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| STACI CHRISTENSEN, JOHN R. WEAKLY, and DISABILITY LAW CENTER,<br><br>Plaintiffs,<br><br>vs.<br><br>JOSEPH MINER M.D., et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:18CV37DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on approval of a Class Action Settlement Agreement and Working Plan. The court held a Fairness Hearing under Federal Rule of Civil Procedure 23(e) on November 21 & 22, 2019. At the hearing, Plaintiffs were represented Juliette White, Laura Henrie, Mary Ann Davies, and Nathanial Crippes, Defendants were represented by David Wolf, Laura Thompson, and Tony Patterson, and the Intermediate Care Facility Intervenors ("ICFs") were represented by Michael Collins and Greg Anjewierden. The court took the matter under advisement. The court has carefully considered the memoranda submitted by the parties, letters submitted by interested members of the public, the testimony and evidence presented at the Fairness Hearing, the arguments of counsel at the Fairness Hearing, and the law and facts relevant to approval of the Settlement Agreement. Now being fully advised, the court enters the following Memorandum Decision and Order.

**BACKGROUND**

On December 19, 2016, the Disability Law Center ("DLC") wrote a letter to Governor Herbert, the Executive Director of the Utah Department of Health ("UDOH"), and the Executive Director of Human Services, alleging that the State of Utah's failure to create a working plan to transition individuals with intellectual and/or developmental disabilities from intermediate care facilities ("ICFs")into the community at a reasonable pace constitutes a violation of the Americans with Disabilities Act ('ADA") and *Olmstead v. L.C.*, 527 U.S. 581 (1999). State officials met with several parties and held a series of public meetings to seek input from interested parties regarding the need for home and community based services ("HCBS") for individuals with intellectual and developmental disabilities. However, the DLC was not satisfied with the pace of progress and filed this class action lawsuit against the various State defendants on January 12, 2018.

The Complaint requested that the State of Utah: (1) develop and implement a working plan for identifying and transitioning individuals with intellectual or developmental disabilities from private ICFs into home and community-based services by providing appropriate information and supports and conducting appropriate assessments of all residents to determine individual preference; (2) evaluate, improve, and expand the services that support individuals with intellectual or developmental disabilities so that individuals who reside in private ICFs and are not opposed to leaving may live in integrated, community-based settings; and (3) reduce the State's reliance on segregated, institutional care in private ICFs for individuals with intellectual or developmental disabilities in Utah.

Before the proposed Settlement Agreement for this case was approved by the Governor

and State Legislature, public committee meetings were held to discuss funding and other issues related to the potential settlement. On February 6, 2019, the proposed Settlement Agreement was presented to the Social Services Appropriations Subcommittee, along with UDOH and DHS funding requests. The state agencies' presentation included power point slides identifying anticipated ICF bed reductions and suggested funding for ICF quality improvements. On March 4, 2019, Governor Herbert approved the terms of the Settlement Agreement and forwarded it the President of the Senate and Speaker of the House of Representatives. At the legislative hearing on the Settlement Agreement, a representative of UHCA spoke on the bill. On March 12, 2019, the Legislature passed the bill approving the terms of the Settlement Agreement. On April 16, 2019, Utah Department of Health representatives met with ICF representatives to discuss the Settlement Agreement at the UHCA spring conference.

On May 14, 2019, this court certified Plaintiffs' proposed class of "all persons with an intellectual and/or developmental disability who are eligible for Medicaid, reside in a private ICF in Utah on or after January 12, 2018, and prior to the termination of this lawsuit have expressed an interest in living in the community and are capable of living in the community." On May 17, 2019, this court preliminarily approved the parties' proposed joint Settlement Agreement and scheduled a fairness hearing for final approval of the agreement. Most of the private ICFs in Utah moved to intervene in this action after receiving notice of the preliminary approval and scheduled Fairness Hearing. The court granted the motion and allowed the ICFs to participate at the fairness hearing.

The ICF Intervenors claim that the proposed Settlement Agreement is against the public interest and goes beyond the relief requested in Plaintiff's Complaint because it requires

3

Defendant to transition approximately 300 potential class members from private ICFs to HCBS within six years, put in place a moratorium on licensing additional beds in private ICFs in Utah, and reduce the total number of licensed private ICF beds.

**DISCUSSION**

Under Rule 23(e) of the Federal Rules of Civil Procedure, "[t]he claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The court may approve a binding settlement agreement "only after a hearing and only on finding that it is fair, reasonable, and adequate." *Id.* 23(e)(2); *see also Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993). In determining that the settlement agreement is fair, reasonable, and adequate, the court must consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." *Id.*

In this case, the class is defined quite narrowly.[1] Only those residents who express an interest in leaving an ICF for HCBS are part of the class. In the past, the State of Utah has not had a viable option for these individuals. The previous "Transition Program" did not track

---

[1] The ICFs challenge the class certification, but the court has already made findings regarding the appropriateness of class certification and the ICFs' current challenge is untimely and without merit.

interest levels, did not receive consistent funding, and left many individuals who desired to leave an ICF in an ICF. The class representatives and class counsel have brought the inadequacies of the past system to light and worked with state officials to obtain expanded HCBS for those desiring such services. While the ICF intervernors claim that the definition of class member is too narrow, there are hundreds of ICF residents in Utah who fall within the definition. The lawsuit was not merely about increasing funding for individuals with disabilities living in ICFs and the definition of class member does not need to broadly include every resident of an ICF. Counsel for the Disability Law Center stated that they had been meeting with ICF residents for years, learning that they many desired more integrated HCBS services and realizing that they could not obtain such services for those individuals under the State's Transition Program. The class action lawsuit was brought to create such options for a specific group of ICF residents. The ICFs acknowledge that residents having a choice of services is desirable. The class representatives and class counsel have made that choice possible by bringing about fundamental changes to the services the State of Utah provides. Such changes represent the interests of a significant subset of ICF residents who are members of the class. The court concludes that the class representatives and class counsel have adequately represented the interests of the class.

There is no serious dispute about whether the settlement of this class action was negotiated at arm's length. The parties exchanged proposals for over a year and a joint expert was engaged to work with both parties. The settlement was sent to the Governor and Utah Legislature for review and the Legislature held public hearings on the proposed settlement.

The proposed Settlement Agreement is a compromise negotiated by the parties that represents the interests of the class members within the confines of the State of Utah's limited

resources. The State of Utah has many demands on its finite resources. However, it also has a duty under the law to provide services in accordance with the ADA and *Olmstead*. Both parties in this case faced risks in the litigation process along with ongoing costs. The case presents serious issues of law and fact and neither party could be certain of the outcome. The negotiated settlement provides both parties with a certain outcome and a shortened litigation process, which allows for more immediate relief to the class members. The State wisely determined that its limited resources were better spent on providing resources to citizens than on attorney's fees in potentially protracted litigation. The certainty of the outcome also allowed the parties to go to the Legislature to get funding for specified goals. The Settlement Agreement further provides for increased educational materials regarding services and an advisory committee to address future issues. While there could always be arguments regarding whether one side could have obtained better terms in the Settlement Agreement, such arguments are almost always speculative and improperly discount the realities facing the parties at the time. The court concludes that the Settlement Agreement is a fair and adequate negotiated compromise of the claims asserted in this action.

The ICFs, however, contend that the Settlement Agreement is not in the public interest because it limits ICF bed numbers and fails to increase the funding per bed. While these are important issues to the continued viability of ICFs, these are issues that will need to be addressed by the Utah Legislature not this court. The court's role is merely to ensure that the State of Utah complies with the law. The court does not make policy decisions. The State must determine how it allocates its limited resources within the confines of governing law. The court cannot address every decision or change the State makes that may ultimately affect participants in

certain markets. The court's only role is to adjudicate legal controversies, not policy disputes.

In any event, the State of Utah has represented to the court that it is committed to keeping ICFs as a viable service option. The significant number of remaining ICF beds under the Settlement Agreement demonstrate a continued commitment to ICFs. However, the Settlement Agreement's further stated goal of reducing the State's reliance on ICFs merely provides for a range of services that can accommodate individual choice. Such a goal does not call for any ICF closures. The letters this court received demonstrate that ICFs are the best option for some families and an important component in the spectrum of services the State offers. In spite of the nationwide trend away from ICFs, the Settlement Agreement maintains a significant number of ICF beds. And, at this point in time, the affects on ICFs is speculative given the Legislature's ability to address these issues going forward. The court has read each of the letters submitted by families wishing to keep their loved ones in an ICF. The court found these letters compelling and it is confident that if the Legislature were to receive the letters this court received, the Legislature would ensure that ICFs remain a viable option in Utah. Moreover, the alleged impact on ICFs from residents leaving for HCBS is gradual and can be addressed over several years. The reduction in the number of ICF beds merely recognizes, as a part of the negotiated settlement, that the resources for those beds will be used to provide HCBS for residents leaving ICFs. The evidence presented to the court demonstrates that the parties have made reasonable calculations based on interest levels expressed to date.

In addition, the Settlement Agreement does not mandate that a certain number of residents leave ICFs. Rather, it provides for flexibility and the number of residents transferring to ICFs can be revisited. No ICF resident will be required to transfer from an ICF to HCBS

against his or her wishes as a result of the Settlement Agreement. Moreover, the Legislature could also address bed numbers based on need and available resources in the future. Although the ICFs maintain that the Settlement Agreement will destroy personal choice and put ICFs out of business, there is no credible evidence to support such claims. The evidence shows that the Settlement Agreement actually provides for greater personal choice.

The ICFs also contend that the educational materials provided for in the Settlement Agreement are not balanced because they give more information regarding HCBS than ICFs. However, the educational materials would be given to ICF residents who already know the ICF services they are receiving. In addition, the ICFs argue that the Settlement Agreement does nothing for individuals on the State's waiting list for services. However, the class does not include individuals on the waiting list, only those individuals already residing in an ICF. These individuals may have grounds for their own lawsuit or they could lobby the Legislature for an overall increase in funding for needed services, but this court cannot remedy their situation in a case regarding the services available to ICF residents.

The court concludes that the Settlement Agreement is not against the public interest. The ICFs' concerns are best directed to the Utah Legislature. At this point, their concerns are speculative and many of them could be addressed by the Legislature in the next legislative session or future session as the Settlement Agreement is implemented. Accordingly, the court finds that the proposed Settlement Agreement meets the requirements of Rule 32. Therefore, the court approves of the proposed Settlement Agreement.

## CONCLUSION

Based on the above reasoning, the court approves the proposed Settlement Agreement

under Rule 23 of the Federal Rules of Civil Procedure. Although the court will retain jurisdiction over the matter in accordance with the terms of the Settlement Agreement, the court is administratively closing the case to remove the case from its docket of pending cases.

DATED this 19th day of December, 2019.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge